Seyfarth Shaw LLP
Laura Wilson Shelby (SBN 151870)
lshelby@seyfarth.com
Catherine S. Feldman (SBN 299060)
cfeldman@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendants
LA-Z-BOY, INC. and OSCAR PINEDA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| PATRICIA SAAVEDRA, an individual, | Case No. 5:19-cv-2415 |
|---|---|
| Plaintiff, | **DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT** |
| v. | |
| LA-Z-BOY, Inc., a Michigan corporation; OSCAR PINEDA, an individual; and DOES 1 through 60, inclusive, | **[28 U.S.C. §§1332, 1441, AND 1446]** |
| Defendants. | Complaint Filed:  November 12, 2019 |

NOTICE OF REMOVAL

60519861v.2

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF PATRICIA SAAVEDRA AND HER ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants La-Z-Boy, Inc. ("La-Z-Boy") and Oscar Pineda ("Pineda") (collectively referred to as "Defendants") hereby remove the above-referenced action from the Superior Court of the State of California for the County of San Bernardino, to the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 1332, 1441(a), and 1446, based on diversity of citizenship jurisdiction.  This removal is proper for the following reasons.

**I.    BACKGROUND**

1.    On November 12, 21019, Plaintiff Patricia Saavedra ("Plaintiff") brought a case in the Superior Court of the State of California for the County of San Bernardino, entitled *Patricia Saavedra v. La-Z-Boy, Inc., et al.*, Case No. CIVDS1934078 (the "State Court Action").

2.    The Complaint alleges six causes of action: (1) Discrimination in Violation of the Fair Employment and Housing Act ("FEHA"); (2) Harassment in Violation of FEHA; (3) Retaliation in Violation of FEHA; (4) Failure to Take Steps Necessary to Stop Discrimination, Harassment, and Retaliation; (5) Termination in Violation of Public Policy; and (6) Retaliation in Violation of California Labor Code Section 1102.5.

3.    On November 14, 2019, La-Z-Boy received, via process server, the Summons, the Complaint, and the Civil Case Cover Sheet.  A true and correct copy of the packet received by La-Z-Boy is attached as **Exhibit A.**

4.    On November 15, 2019, Pineda received, via process server, the Summons, the Complaint, and the Civil Case Cover Sheet.  A true and correct copy of the packet received by Pineda is attached as **Exhibit B.**

5.    On November 25, 2019, Plaintiff served La-Z-Boy with the Notice of Trial Setting Conference.  A true and correct copy of the Notice of Trial Setting Conference is attached as **Exhibit C**.

NOTICE OF REMOVAL

60519861v.2

6.    On November 26, 2019, Defendants received, via overnight mail, Plaintiff's Requests for Production of Documents to La-Z-Boy, Inc. and Plaintiff's requests for Production of Documents to Pineda.  A true and correct copy of written discovery received by Defendants is attached as **Exhibit D.**

7.    On December 5, 2019, Defendants received, via overnight mail, Plaintiff's Notice of Deposition of Pineda.  A true and correct copy of the deposition notice is attached as **Exhibit E.**

8.    On December 11, 2019, Defendants filed their Answer to Plaintiff's Complaint in the Superior Court for the State of California, County of San Bernardino.  A true and correct copy of Defendants' Answer is attached as **Exhibit F**.

9.    **Exhibit A** through **Exhibit F** constitute all prior pleadings, discovery, and orders served upon or Defendants in this matter.

## II.    TIMELINESS OF REMOVAL

10.    This Notice of Removal is timely because it is being filed within thirty days of service of the Summons and Complaint on November 14, 2019, and within one year of the commencement of this action.  28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 354-55 (1999) (thirty-day deadline to remove commences upon service of the summons and complaint).

## III.    DIVERSITY OF CITIZENSHIP JURISDICTION

11.    The Court has original jurisdiction of this action under 28 U.S.C. section 1332(a)(1).  Defendants may remove this action from state to federal court pursuant to 28 U.S.C. section 1441(a) as the amount in controversy exceeds $75,000, exclusives of interest and costs, and is between citizens of different states.

### A.    Plaintiff Is a Citizen Of California

12.    Plaintiff is and, at all times since the commencement of this action has been, a resident and citizen of the State of California.  For diversity purposes, a natural person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  For purposes of diversity of citizenship

3

NOTICE OF REMOVAL

jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 29 F.3d 514, 520 (10th Cir. 1994).

13. The Complaint alleges that Plaintiff "at all relevant times, was working as a Human Resources Manager in La-Z-Boy's plant in San Bernardino County, California." (Ex. A, ¶ 4.) Per Plaintiff's personnel file, she worked at a California La-Z-Boy facility. Neither Plaintiff nor her counsel has provided a different address or expressed that Plaintiff does not intend to remain domiciled in California.

14. Therefore, Plaintiff is, and at all times since the commencement of this action has been, a resident and citizen of the State of California.

**B.    Defendant La-Z-Boy Is A Citizen of Michigan**

15. La-Z-Boy is now, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(1). "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c); *Davis v. HSBC Bank Nevada, N.A.,* 557 F.3d 1026, 1028 (9th Cir. 2009) ("[A] corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'"). One determines a corporation's principal place of business with the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Under the "nerve center" test, a corporation's principal place of business is where its "officers direct, control and coordinate the corporation's activities." *Id.* at 92. A corporation typically directs and coordinates its activities from its headquarters. *Id.*

16. La-Z-Boy is now, and ever since this action commenced has been, a corporation incorporated under the laws of the State of Michigan, where its corporate headquarters are located.

NOTICE OF REMOVAL

60519861v.2

17.    Under the "nerve center" test, La-Z-Boy's principal place of business is the State of Michigan because most of La-Z-Boy's executive and administrative functions occur in corporate headquarters at Monroe, Michigan.  Accordingly, for purposes of diversity of citizenship, La-Z-Boy is, and has been at all times since this action commenced, a citizen of the State of Michigan.  28 U.S.C. § 1332(c)(1).

C.    **Defendant Pineda's Citizenship Should Be Disregarded Because He Is A Sham Defendant**

18.    Pineda must be disregarded for purposes of diversity because he is a sham defendant; that is, he cannot be found liable as a matter of law.  *See, e.g.*, *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (holding that removal based on diversity of citizenship was proper and that district court "correctly ignored" joinder of a resident defendant after it was shown that plaintiff "could not possibly prevail" on her claim against the resident defendant); *TPS Utilicom Serv., Inc. v. AT&T Corp.*, 223 F.Supp.2d 1089, 1100-01 (C.D. Cal. 2002) ("Section 1441(b) does not prevent removal of an action to which the plaintiff fraudulently joins resident defendants.").

19.    Pineda is a sham defendant because he has been fraudulently named. Joinder of a defendant is fraudulent and a "sham" if the defendant cannot be liable to the plaintiff on any theory alleged in the complaint.  *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("[F]raudulently joined defendants will not defeat removal on diversity grounds."), cert. denied, 525 U.S. 963 (1998); *McCabe v. Gen. Foods Corp.*, 811 F.2d  1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."); *Lewis v. Time, Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), aff'd, 710 F.2d 549 (9th Cir. 1983) (a sham defendant is to be ignored for purposes of removal).

20.    When determining whether a defendant is fraudulently joined, "[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Lewis*, 83 F.R.D. at 455 ("[I]t is well settled that upon allegations

5

NOTICE OF REMOVAL

60519861v.2

of fraudulent joinder . . . federal courts may look beyond the pleadings to determine if the joinder . . . is a sham of fraudulent device to prevent removal."); *McCabe*, 811 F.2d at 1339 (a defendant "Is entitled to present the facts showing the joinder to be fraudulent").

21.     If the facts reveal that joinder is fraudulent, the defendant may be dismissed from the action pursuant to Rule 21 of the Federal Rules of Civil Procedure, which provides that "[p]arties may be dropped or added by order of the court on motion of any party ... at any stage of the action and on such terms as are just." *Gasnik v. State Farm Ins. Co.*, 825 F. Supp. 245, 248-249 (E.D. Cal. 1992).

22.     Plaintiff's Complaint arises from an employment dispute with her employer, La-Z-Boy.  However, Plaintiff has fraudulently asserted two causes of action against individual Defendant Pineda, the Second Cause of Action for Harassment in Violation of FEHA and the Fifth Cause of Action for Termination in Violation of Public Policy.

23.     Plaintiff's allegations demonstrate that Pineda's conduct cannot give rise to liability.  The sum total of allegations raised by Plaintiff against Pineda address Pineda's approach and recommendations regarding hiring and termination decisions of La-Z-Boy employees.  (Ex. A, ¶¶ 13- 28.)  Plaintiff alleges that from 2016 through 2019 Pineda, who she acknowledges was also over the age of 40, "stressed the need for a 'younger bench,' 'younger talent,' and 'fresh talent,'" and "explicitly instructed Plaintiff to refrain from hiring older employees."  (Ex. A, ¶ 14.)  Plaintiff further alleges that "[t]hroughout 2018, Defendant Pineda actively replaced numerous Redlands plant management staff members with younger new hires."  (Ex. A, ¶15.)  As alleged in the Complaint, these hiring practices continued in 2019.  Plaintiff alleges that, "[t]hroughout 2019, Plaintiff found several well-qualified and highly experienced candidates for open positions at the Redlands plant; however, Defendant Pineda consistently ignored Plaintiff's recommendations and hired younger personnel who were 'young,' 'fresh,' and 'up and coming.'"  (Ex. A, ¶ 23.)

24.     None of Plaintiff's allegations against Pineda address any conduct or behavior that Pineda directed toward her that could possibly form the basis of a

6

NOTICE OF REMOVAL

60519861v.2

harassment claim. As to Plaintiff's involvement in the decision to terminate Plaintiff, that too is not a proper claim made against an individual. Specifically, Plaintiff alleges that "[o]n or about May 16, 2019, Defendant Pineda and the Director of Human Resources, Jason Loeffel, informed Plaintiff that her position was being eliminated." (Ex. A, ¶ 26.)

25. The claims against Pineda premised on these allegations are not viable as a matter of law for several reasons: (1) the managerial privilege precludes personal liability; (2) Plaintiff cannot establish that the alleged conduct was severe or pervasive; and (3) the common law cause of action for wrongful termination in violation of public policy can only be brought against an employer.

26. Accordingly, Plaintiff's Second Cause of Action for Harassment in Violation of FEHA and the Fifth Cause of Action for Termination in Violation of Public Policy cannot be asserted against Pineda.

### 1. Pineda Is A Sham Defendant Because His Alleged Conduct Is Not Severe Or Pervasive Conduct That Can Constitute A Harassment Claim

27. Plaintiff's Second Cause of Action for Harassment in Violation of FEHA against Pineda is without merit. The sole allegations related to Pineda do not set forth a harassment claim. A plaintiff claiming harassment based upon a "hostile work environment" theory must show that that the harassing conduct was "severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their [age]." *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009). It must be distinguishable from "the ordinary tribulations of the workplace, such as the sporadic use of abusive language." *Etter v. Veriflo Corp.*, 67 Cal. App. 4th 457, 464 (1998).

28. Plaintiff's cause of action is a textbook example of what harassment is *not*. Several cases confirm that the specific conduct Plaintiff claims to be "harassment" is too routine to be actionable. *See, e.g. Cofer v. Parker-Hannifin Corp.*, 194 F.Supp.3d 1014, 1019 (2016) (reasoning that individual defendants' refusal to interview plaintiff for

NOTICE OF REMOVAL

60519861v.2

promotions and terminating him along with terminating older employees, among other conduct, was "routine personnel-related conduct" that did not amount to harassment.); *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998) ("the Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments . . . promotion or demotion . . . the assignment or nonassignment of supervisory functions . . . and the like, do not come within the meaning of harassment.")

29.    To be sure, Pineda's conduct cannot be considered severe or pervasive because even repeated instances of verbal abuse, profane language, and threats of job loss are insufficient. *See e.g., Hughes,* 46 Cal. 4th at 1049 (summary judgment affirmed for the employer; a supervisory employee threated plaintiff's job and plaintiff was told "I'll get you on your knees eventually. I'm going to fuck you one way or another;" "Most reasonably construed, defendant's comment was a threat . . . of financial retaliation").

30.    Indeed, summary judgment has been affirmed in cases involving much more frequent and much more offensive remarks, as compared to what Plaintiff claims in this matter. *See, e.g., Vetter,* 67 Cal. App. 4th at 465 (summary judgment affirmed for the employer as to claim for racial harassment; calling the plaintiff "boy" almost daily, "Buckwheat" between five and ten times, "Jemima" twice on one day, "Stymie" once or twice, and asking him why some Black people pronounce the word "ask" as "axe" and then ridiculing the pronunciation of other Black workers not severe or pervasive enough to constitute racial harassment); *Muller v. Auto. Club of S. California*, 61 Cal. App. 4th 431, 446 (1998) (affirming dismissal of plaintiff's harassment claim; insensitive remarks by plaintiff's supervisor and plaintiff's co-workers' were held to be "isolated remarks [that] cannot reasonably be viewed as 'a concerted pattern of harassment of a repeated, routine or a generalized nature.' Rather, they fall into the category of 'occasional, isolated, sporadic, or trivial' instances of inappropriate conduct"); *Guthrey v. State of California*, 63 Cal. App. 4th 1108, 1124 (1998) (affirming dismissal of harassment claim of employee who was berated in front of his peers, and was subject to investigation; acts were too "trivial and occasional" to be actionable); *Fisher v. San Pedro Peninsula Hosp.*,

8

NOTICE OF REMOVAL

60519861v.2

214 Cal. App. 3d 590, 609-610 (1989) (affirming dismissal of claims for unlawful harassment; "the plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological wellbeing of a reasonable employee and that [he] was actually offended").

31.    Similar to the foregoing examples above, the conduct Plaintiff alleges regarding Pineda are insufficiently "severe or pervasive."  Plaintiff's allegations of routine personnel management decisions, such as staffing, hiring, and firing decisions do not meet the necessary standard.

32.    Accordingly, Plaintiff has not stated, and cannot state, a viable claim against Pineda for harassment.  Pineda's joinder is thus fraudulent.  *Hamilton Mat. Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) ("If plaintiff fails to state a cause of action against a resident defendant and the failure is obvious according to settled rules of the state, the joinder of the resident defendant is fraudulent.")

### 2.    Pineda Is A Sham Defendant Because The Managerial Privilege Precludes Personal Liability On The Harassment Claim

33.    Plaintiff's Harassment in Violation of FEHA cause of action against Pineda is also without merit because, at most, the hiring and firing recommendations Pineda made to Plaintiff, are non-actionable personnel decisions.

34.    As explained by the California Supreme Court in *Reno v. Baird*, 18 Cal. 4th 640 (1998), personnel-related decisions involving hiring and firing, job or project assignment, promotions or demotions, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, and deciding who will be laid off are necessary management actions that do not come within the meaning of harassment.  *Id*. at 646-47.  This is because personnel-related decisions are a normal part of an employment relationship that cannot be avoided.  On the other hand, conduct that constitutes harassment is avoidable because it is not a necessary part of the employment relationship.  *Id*. at 646.  In the language of the Court:

> Making a personnel decision is conduct of a type fundamentally different from the type of conduct that constitutes harassment.

9

NOTICE OF REMOVAL

60519861v.2

Harassment claims are based on a type of conduct that is avoidable and unnecessary to job performance. No supervisory employee needs to use slurs or derogatory drawings, to physically interfere with freedom of movement, to engage in unwanted sexual advances, etc., in order to carry out legitimate objectives of personnel management.

We conclude, therefore, that the Legislature intended that **commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning or harassment.** These actions are of a type necessary to carry out the duties of business and personnel management.

35.    *Id.* at 646-47 (emphasis added). Plaintiff alleges that she was harassed on account of her age. (Ex. A, ¶ 47.) However, none of the conduct alleged, even if true, comes close to actionable harassment. Indeed, Plaintiff alleges that Pineda "hired employees in their late twenties (20s) and early thirties (30s), while transferring or terminating more experienced managers." (Ex. A, ¶ 47.) This allegation addresses innately personnel-related conduct that is part of the normal course of employment for a managerial employee, such as Pineda.

36.    This is precisely the type of allegation that the California Supreme Court in *Reno* held did not amount to actionable harassment because plaintiff had alleged routine personnel-related conduct. *See Reno*, 18 Cal. 4th at 646-47; *see also Hardin v. Wal-Mart Stores, Inc.*, 2012 WL 691707 at *18 (E.D. Cal., Mar. 2, 2012) ("Personnel management actions commonly necessary to carry out the duties of business and personnel management, and thus outside the purview of harassment, include 'hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions' and decisions regarding meetings.").

37.    Given that Plaintiff's claims are based solely on personnel decisions, Pineda cannot be liable as a matter of law. As the California Supreme Court held in *Reno*, 18 Cal. 4th at 647, only employers are liable for the personnel management actions of their

10

NOTICE OF REMOVAL

60519861v.2

supervisors:

> By the inclusion of the "agent" language the Legislature intended only to ensure that **employers** will be held liable if their supervisory employees take actions later found discriminatory, and that **employers** cannot avoid the liability by arguing that a supervisor failed to follow instructions or deviated from the employer's policy.

*Id.* Thus, the Court held that "it is 'inconceivable' that the Legislature simultaneously intended to subject individual non-employers to the burdens of litigating such claims. To so construe the [FEHA] statute would be 'incongruous' and 'would upset the balance' struck by the Legislature." *Id.* at 651 (citations omitted).

38.   The Court in *Reno* stressed that a theory that imposed individual liability "would place a supervisory employee in direct conflict of interest with his or her employer every time that supervisory employee faced a personnel decision." *Id.* at 653. The Court explained that it "would coerce the supervisory employee not to make the optimum lawful decision for the employer. Instead, the supervisory employee would be pressed to make whatever decision was least likely to lead to a claim of discrimination against the supervisory employee personally, or likely to lead only to that discrimination claim which could most easily be defended." *Id.* The Court concluded that "the employee would thus be placed in a position of choosing between loyalty to the employer's lawful interests at severe risks to his or her own interests and family, versus abandoning the employer's lawful interests and protecting his or her own personal interests. The insidious pressures of such a conflict present sobering implications for the effect of management of our industrial enterprises and other organizations of public concern." *Id.* Thus, the Court determined that "we believe that if the Legislature intended to place all supervisory employees in California in such a conflict of interest, the Legislature would have done so . . ." *Id.*; *accord Garza v. BNSF, Co.*, 2012 WL 2118179 at *4 (E.D. Cal., June 11, 2012) ("FEHA does not allow for individual liability for discriminatory acts. Further, under Title VII, "civil liability for employment discrimination does not extend to individual agents of the employer who committed the violations, even if that agent is a supervisory employee") (citing *Pink v. Modoc Indian*

11

NOTICE OF REMOVAL

60519861v.2

*Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998)); *Leland v. City & County of San Francisco*, 576 F. Supp. 2d 1079, 1088 (N.D. Cal. 2008) ("under FEHA, no individual liability attaches for claims of discrimination").

39. Accordingly, as the totality of Plaintiff's allegations against Pineda in support of Plaintiff's Second Cause of Action for Harassment in Violation of FEHA involve personnel decisions and the management of La-Z-Boy's employees by Pineda, Pineda's alleged conduct is protected by the managerial privilege.

### 3. Pineda Is A Sham Defendant Because The Wrongful Termination Claim Against Him Cannot Be Brought Against An Individual Defendant As A Matter Of Law

40. Plaintiff's Fifth Cause of Action for Wrongful Termination in Violation of Public Policy is without merit. This cause of action lies only against an employer. *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 901 (2008). Plaintiff has not alleged, and cannot allege that Pineda was her employer. In fact she specifically identifies La-Z-Boy as her employer and further states that La-Z-Boy hired Pineda after Plaintiff. (Ex. A, ¶¶ 4, 10, 12.)

41. As detailed herein, the California Supreme Court stated in *Reno* that individual managers, supervisors, and employees cannot be held personally liable for harassment premised on personnel management decisions. The Court also addressed the issue of supervisor liability under the common law theory of wrongful discharge, and held that supervisors may not be sued individually for wrongful termination in violation of public policy. *Reno,* 18 Cal. 4th at 663. Indeed, the Court specifically stated:

> It would be absurd to forbid a plaintiff to sue a supervisor under the FEHA, then allow essentially the same action under a different rubric. Because Plaintiff may not sue [Defendant] as an individual supervisor under the FEHA, she may not sue her individually for wrongful discharge in violation of public policy.

*Id.* at 664; *see also Khajavi v. Feather River Anesthesia Med. Group*, 84 Cal. App. 4th 32, 53 (2000) ("As a matter of law, only an employer can be liable for the tort of wrongful discharge in violation of public policy."); *Lloyd v. Cnty. of Los Angeles*, 172

NOTICE OF REMOVAL

60519861v.2

Cal. App. 4th 320, 330 (2009) ("An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy ….") (internal citations omitted).

42.    Thus, Plaintiff's fifth cause of action for Wrongful Termination in Violation of Public Policy against Pineda has been fraudulently pled.  Consequently, because Pineda is a "sham" defendant, his citizenship should be disregarded for determining diversity jurisdiction.

### D.    Doe Defendants Are Disregarded For Diversity

43.    Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332.  *Fristoe v. Reynolds Metals, Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of Doe defendants, 1-60, does not deprive this Court of jurisdiction.

## IV.    AMOUNT IN CONTROVERSY

44.    While Defendants deny any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000.  *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 403-404 (9th Cir. 1996) ("the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount." (internal citation omitted)).  As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).  In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees.  *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory).  *See*

60519861v.2

*also Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).

45. Here, considered together, the general and special damages sought by Plaintiff, along with the attorneys' fees and punitive damages that might be awarded if Plaintiff prevails, establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.

46. ***Lost wages.*** Here, Plaintiff seeks lost wages. (Ex. A, ¶ 100; Prayer ¶ 1.) Plaintiff alleges she was discharged on or about May 17, 2019. (Ex. A, ¶ 27.) From that time to the date of this removal filing, approximately 6 weeks have elapsed. At the time of her discharge, Plaintiff earned an annual salary of $100,000. Accordingly, thus far Plaintiff's claim for lost wages is approximately $50,000. Assuming a conservative trial date of 12 months after service of the Complaint, or November 2020, Plaintiff's lost wages up to the point of trial, alone, will amount to approximately $141,667. This amount does not account for the other special damages Plaintiff seeks, such as losses in employment benefits, which will further increase the claim for special damages.

47. The Court must also consider Plaintiff's other alleged damages, which certainly add to the amount in controversy.

48. ***Emotional distress.*** In addition to lost wages, Plaintiff claims emotional distress damages including "mental and physical pain and anguish." (Ex A. ¶¶ 39, 53, 67, 78; Prayer ¶ 2.) In cases alleging discriminatory and retaliatory discharge, the emotional distress damages alone often exceed the $75,000 amount in controversy requirement. t.[1] *See Kamali v. California Dept. of Transp.*, No. BC426247, 2012 WL 9028840 (Los Angeles County Sup. Ct. December 20, 2012) ($663,983 verdict - exclusive of attorneys' fees - in a single plaintiff employment action alleging harassment, discrimination, disability discrimination, failure to accommodate, retaliation, failure to

---

[1] To establish the amount in controversy, a defendant may rely on jury verdicts in cases involving similar facts. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

14

NOTICE OF REMOVAL

60519861v.2

prevent discrimination, of which $100,000 was allocated to past noneconomic damages); *Palma v. Rite Aid Corp.*, No. BC465411, 2012 WL 3541952 (Los Angeles County Sup. Ct. July 24, 2012) ($3,522,070 verdict in a single plaintiff employment action alleging disability discrimination, gender discrimination, harassment, medical leave termination, and intentional infliction of emotional distress, of which $3,000,000 was allocated to past and future non-economic damages, where plaintiff had sustained only $81,319 in past economic damages, and $440,751 in future economic damages); *Conney v. University of California Regents*, 2004 WL 1969934 (Los Angeles County Superior Court) (July 27, 2004) ($300,000 in past non-economic damages and $600,000 in future non-economic damages awarded to plaintiff claiming retaliation); *Andrews v. Hansa Stars Inc.*, 2009 WL 1587809 (Los Angeles County Superior Court) (Apr. 16, 2009) (award of $375,000 and $225,000 to multiple plaintiffs for emotional distress damages in wrongful discharge action); *Kolas v. Alticor Inc.*, 2008 WL 6040410 (Los Angeles County Superior Court) (Jan. 14, 2008) (awarding wrongful-discharge plaintiff $200,000 in emotional distress damages). These awards demonstrate that, for diversity purposes, the value of Plaintiff's claimed emotional distress damages exceeds the $75,000 amount in controversy requirement on its own.

49. ***Punitive damages.*** Plaintiff also seeks punitive damages. (Ex. A, ¶¶ 42, 56, 70, 81, 89, 102; Prayer ¶ 4.) For amount in controversy purposes, the Court must conclude that Plaintiff will prevail on her claim for punitive damages. *See Davenport v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449-50 (S.D. Cal. 1995) (amount in controversy includes potential recovery of punitive damages award). Because La-Z-Boy is a large, profitable corporation, the potential punitive damages here could themselves exceed the $75,000 threshold. Moreover, an examination of jury awards shows that punitive damage awards alone in these types of cases can greatly exceed the $75,000 amount in controversy requirement. *See Aboulida v. GACN Inc.*, 2013 WL 811991 (Los Angeles

15

NOTICE OF REMOVAL

60519861v.2

Sup. Ct.) (award of $1,000,000 in punitive damages in discrimination case); *Ward v. Cadbury Schweppes Bottling Grp.*, 2011 WL 7447633 (C.D. Cal.) (jury awarded $9,687,400 in punitive damages to six employees in discrimination and retaliation action).

50.    ***Attorneys' fees.***  Requests for attorneys' fees must also be considered in ascertaining the amount in controversy.  *See Galt G/S*, 142 F.3d at 1156 (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether award is discretionary or mandatory).  The reasonable amount of attorneys' fees may be based upon fee awards in similar cases.  *Lyon v. W.W. Grainger Inc.*, 2010 WL 1753194, at *5 (N.D. Cal. Apr. 29, 2010) ("Defendant's use of similar cases to estimate the cost of attorney's fees is sufficient to establish that its estimate is more likely than not correct."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (relying on evidence of fee awards in similar cases to determine a reasonable estimate of attorneys' fees). Verdicts in similar cases show that attorneys' fees in retaliation and wrongful termination cases typically exceed $75,000.  *See Denenberg v. California Dep't of Trans.*, 2007 WL 2827715 (San Diego County Superior Court) (Sept. 14, 2006) (attorney's fees award of $490,000 in case alleging discrimination, sexual harassment, and retaliation); *McMillan v. City of Los Angeles*, 2005 WL 3729094 (Los Angeles County Superior Court) (March 21, 2005) (attorney's fees award of $504,926 in case alleging discrimination and retaliation for filing lawsuit to redress discrimination); *Gallegos v. Los Angeles City College*, 2003 WL 23336379 (Los Angeles County Superior Court) (Oct. 16, 2003) (attorney's fees award of $159,277 for claim of wrongful discharge).

51.    For each of the foregoing reasons, while Defendants deny any liability as to Plaintiff's claims, it is now "more likely than not" that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, as required by 28 U.S.C. section 1332(a).

## V.    VENUE

52.    Removal to this Court is proper because Plaintiff originally filed this action in the Superior Court of the State of California, County of San Bernardino, which is

16

NOTICE OF REMOVAL

located within the Central District of the State of California.  Thus, without waiving Defendants' right to challenge, among other things, personal jurisdiction and/or venue by way of a motion or otherwise, venue lies in this Court pursuant to 28 U.S.C. sections 1391(a) and 1441(a).

## VI.  SERVICE OF NOTICE OF REMOVAL ON PLAINTIFF AND THE CLERK OF THE SUPERIOR COURT

53.  Pursuant to 28 U.S.C. section 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of San Bernardino, in the State Court Action.

54.  This Notice of Removal will be served on counsel for Plaintiff.  A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

## VII.  PRAYER FOR REMOVAL

55.  WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of San Bernardino to the United States District Court for the Central District of California.

DATED: December 16, 2019

Respectfully submitted,

SEYFARTH SHAW LLP

By: _/s/ Catherine S. Feldman_
Laura Wilson Shelby
Catherine S. Feldman
Attorneys for Defendants
LA-Z-BOY, INC. and OSCAR PINEDA

17
NOTICE OF REMOVAL

60519861v.2